IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

AKTHAM ABUHOURAN,

             Plaintiff,

vs.

FLETCHER ALLEN HEALTH CARE INC;
UNIVERSITY OF VERMONT; DR. MICAHEL
A. HORGAN Surgen; DR. TIMOTHY LINK;
DR. DAVID NATHAN MD. AND PASSIAC
COUNTY JAIL; CORRECTIONAL HEALTH
SERVICES; MEDICAL STAFF AND KNOWN
AND UNKNOWN CORRECTIONAL OFFICERS;
THE WARDEN OF PASSIAC COUNTY JAIL
NEW JERSEY PUBLIC DEFENDERS OF
NEW JERSEY; AND ATTORNEY PETER M.
CARTE; JOHN DOE, et.al.

             Defendats.

CIVIL ACTION NO:

07-5708 (DMC)

JURY TRIAL DEMANDED

## CIVIL RIGHT ACTION UNDER 42 U.S.C. §1983
## AND MEDICAL LEGAL MALPRACTICE ACTION

Plaintiff **Aktham Abuhouran,** (hereinafter plaintiff) file this
his Civil right Complaint, Medical Malpractice, and Legal Malpractice
against defendants Fletcher Allen Health Care Inc, University of
Vermont affiliation of "FAHC"; Dr. Michael A. Horgan surgen and
Dr. Timothy Link, assistant to Dr. Horgan; Dr David Nathan M.D. at
the "FAHC" ; Passiac County Jail; Correctioanl Health Services;
known and unknown health staff and correctional officers at the
Passiac County Jail, the Warden of Passiac Copunty Jail, and the
State of New Jersey.

-1-

In addition, defendants New Jersey Public Defenders Office and attoreny Peter M. Carte, John Doe, et.al. (collectively defendants).

This action based on Diversity of Citizenship between the defendants Fletcher Allen Health Care Inc, and its affiliates University of Vermont, Dr. Michael A. Horgan; Dr. Timothy Link; and Dr. David Nathan.

This action also based on Violation of Constitutional rights protected under the Eight Amendment and the Fifth Amendment to the United States Constitutions under Title 42 U.S.C. §1983, and Bivens claim. Plaintiff invoke Title 28 U.S.C. §1331 and §1332. Defendants Passiac County Jail, Correctional Health Services, its known and unknown staff, of health officers and correctional officers who participated in the violation. Plaintiff will amend this complaint by adding the correct names of officers/staff whom was on duty on the dates of November 15 through 20, 2006, while the plaintiff was detained at the Passiac County Jail.

## WAIVER OF THE FILING FEES UNDER 28 USC §1915 (b).

Plaintiff invoke section 1915 (b) because of his inability to pay the filing fees associated with this action. The plaintiff was released from custody on April 24,2007, the plaintiff medical condition is serious and cannot find an employment to suite his ability and preformance of hard labor. Plaintiff suffers debilitating medical problems, and has no substantial income or assets.

He relies on support of friends and family and lacks funds to pay the $350.00 filing fees for this action. Plaintiff prays that this court will grant this request to proceed in forma pauperis status copy of financial affidavit attached herein this complaint.

Plaintiff respectfully request that this court grant this request to proceed under 28 U.S.C.§1915(c), providing that officer of the court to serve all process, and perform all duties in this forma pauperis case.

## TIMELENESS OF THIS COMPLAINT:

As to claims against defendants Fletcher Allen Health Care Inc and the docters involved in the performance of surgery on plaintiff's spinal cord is governed by the Statute of limitation of the State of Vermont which is three (3) years. This complaint is timely since the surgery took place on October 25,2004 less than three years.

As to the rest of the defendants the statute of limitation is governed by New Jersey Statute of limitation which is 2 years from the date of the violation. The violations took place on November 15, through November 20,2006. It is well before the statute of limitation period.

-3-

**JURISDICTION & VENUE:   I.**

**1.**    This Court has subject matter Jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1332, and pursuant to Bivens vs. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and under 42 U.S.C. §1983. Plaintiff invoke the pendent Jurisdiction of this Court under the diversity of Citizenship. Venue is proper where the events giving rise to plaintiff's Claims occured in this Judicial District 28 U.S.C.§1391.

**PARTIES TO THIS COMPLAINT II.**

**2.**    Plaintiff, **Aktham Abuhouran,** is a Citizen of the State of New Jersey, in the City of Jersey City at 522 Central Avenue Apt#3 Jersey City, New Jersey 07307. Plaintiff was a former Federal Prisoner within the custody and care of the Bureau of Prisons from August 14,1997 until April 24,2007 when he was liberated.

**3.**    Defendant Fletcher Allen Healh Care Inc, in alliance with defendants University of Vermont, in Burlington, County Vermont. Is an entity created under the laws of the State of Vermont to provide health services to the public. At all times material to this complaint. It being sued in its business capacity and its affiliate with University of Vermont.(hereinafter "FAHC" ).

**4.**    Defendant University of Vermont is an affiliated entity with defendant Fletcher Allen Health Care Inc, it maintains offices in the State of Vermont to facilitate business as a health care provider and Hospital. At all times material to this complaint and its being sued in its business and affiliate capacity.

-4-

5. Defendant Dr. Micahel A. Horgan, Surgeon Doctor at the Fletcher Allen Health Care Inc, and the University of Vermont he was the surgen who performed the Neurosurgery at Fletcher Allen Health Care Inc, and University of Vermont. At all times material to this complaint. He is sued in his personal and official capacities.

6. Defendant Dr. Timothy Link, Medical Doctor at the Fletcher Allen Health Care Inc, and University of Vermont. He was personally incharged of plaintiff medical care and observations. At all times material to this Complaint. He is sued in his personal and business capacity.

7. Defendant Dr. David Nathan Medical Doctor at the Fletcher Allen Health Care in alliance with University of Vermont. He was incharged of the plaintiff meical procedures during his hospital-ization. At all times material to this complaint. He is sued in his busniess and personel capacity.

8. Defendant Passaic County Jail, in New Jersey. It is a part of the State of New Jersey Correctional Services with contracts with the U.S. Marshel to hold federal inmates and detainees. It is a division of the department of correction in the State of New jersey. At all times material to this Complaint its being sued as a componenet of the State of New Jersey and on its own capacity.

9. Defendant State of New Jersey is the superior incharge and creater of Passaic County Jail. It funded the cost and running of the facility. At all time material to this complaint. It is liable to the acts and misconduct of Passaic County Jail.

-5-

10.     Defendants Health Services of Passiac County Jail also known as "Correctional Health Services" of Passiac County Jail its medical staff and Administrator at all times material to this Complaint they are being sued in their individual and official capacity.

11.     Defendant New Jersey Public Defenders, is a legal entity created under the laws of the State of New Jersey and the Federal Laws in providing legal assistance to indigents defenders at all times material to this Complaint and its being sued in its business capacity.

12.     Defendant Peter M. Carte, an attorney lisenced in the State of New Jersey and the New Jersey State Bar. He is employed by the New Jersey Public Defenders office in Newark, New Jersey at all times material to this Complaint. He is sued in his personell capacity and official capacity.

13.     Defendant John Doe, for known and unknown defendants in this action participated in the Constitutional violation at all times material to this complaint. He is sued in his personall capacity and official capacity.

-6-

## STATEMENT OF FACTS  III.

14.   Following a Jury trial in late 1996, the Plaintiff was sentenced to 109 months of imprisonment on bank fraud charges, money laundering, perjury charges in the Eastern District of Pennsylvania in Criminal Case No: 95-0560-04.The Plaintiff was remanded to the custody of the attorney general on August 14,1997.

15.   On April 26,2002 the Plaintiff was charged in 2nd indictment in the Eastern District of Pennsylvania criminal case 01-629-04  on charges similuar to the charges in the 1rst case, bank fraud, conspiracey, to commit and other related charges. The Plaintiff pleaded guilty to a 24 months sentence in which to run consecutive with the 1st sentence. However, the Court imposed a sentence outside the agreement due to government alleged breach of the plea agreement. The District court imposed 42 months to be consecutive and 18 months to be concurrent to the old sentence.

16.   On March,2004 the Plaintiff was returned back to his initial institution where he was being housed by the burea of Prisons at "FCI,Raybrook" New York.

17.   From March, of 2004 until October 25,2004 the Plaintiff was suffering from medical problems and complications as a result of "FCI,Raybrook" deliberate indiference to his medical need and deliberate delays and prolonging in treatment by an outside specialist for his medical needs.

-7-

18.    On October 25,2004 the Plaintiff was rushed to an-
emergency room Hospital after he lost the ability to walk and
move his lower body. Because of medical staff negligence and
wrongful misconduct. An emergency Spinal Cord Decompression for
Intradural Abscess surgery was performed at the "Fletcher Allen
Health Care" "FAHC" in Burlington County in the State of Vermont.
The injury caused the plaintiff to become paralyzed.

19.    On October 25,,2004 defendant Dr. Michael A.Horgan
M.D. Assistant Professor of Neurosurgery performed the surgery
on Plaintiff with the assistance of Dr. David Nathan,M.D. and
Dr. Timothy Link,M.D.

20.    During the surgery procedure Dr. Michael A.Horgan ordered
an "Acid-Fast Bacteria" smear or culture at the time of surgery.

21.    On October 25,2004 defendant "Fletcher Allen Health
Care" through its Pathology department provided only "an aerobic
culture of the abscess and failed to demonstrate any grouth.

22.    On October 26,2004 general progress notes initiated
by I.D. fellow not #9580 noting the posibility of the cause to
plaintiff abscess is from "Mycobacterium Tuberculosis Bovis" or
"MTB"

23.    On October 26,2004 at 900.am Dr. Michael A.Horgan
attending neurosurgen sopke with Dr. Marini the Clinical Director
from "FCI Raybrook" and informed her of what he had found during
the surgery "he found a large compressive abcess" (etiology is
unknown".

-8-

24.   On October 26, Defendants "FAHC" noted in their general progess notes signed by fellow ID#9580 "need to make sure that Mycobacterium Tuberculosis Bovis  "MTB" abscess is not playing a role here". Swab was sent for regular bacterial culture only" .

25.   On Octoner 27 defendant Dr. Horgan and Dr. Link the neurosurgen. in plaintiff's surgery noted their concerns for "TB" Tuberculosis.

26.   On November 2,2004 Dr. D.Marini the Clinical Director of the "FCI Raybrook" was in contacts with Defendant Michael Horgan, the neurosurgen at "FAHC" and defendant Horgan declined to have the Plaintiff be treated for possible extrapalmonary Tuberculosis. on the same day Dr. Marini *1 was contacted by the Clinical Director of the Bureau of Prisons in Washington, D.C. and advised him of the decision that Dr.Horgan made regarding treatment for possible extrapalmonary Tuberculosis.

27. On November 4,2004 the Plaintiff was airlifted from the "FAHC" in Vermont to Fort Devens in Boston for further evaluation and rehablitation treatment.

---

*1 Dr. D.Marini was the Clinical Director at the FCI raybrook, she was fully incharged of the day to day decisions by the neuroserguns at the Fletcher Allen Health Care in Vermont where the plaintiff under went his nuresergical operation.

28.  As of November 4,2004 no "Acid-fast bacteria was done nor cultures were done at the time of surgery so it will aid the infection disease to determined the cause of the Intradural Abscess surgery that causes Plaintiff of being paralyzed.

29.  As of November 4,2004 no treatment was afforded to the Plaintiff regarding "Mycobacterium Tuberculosis" "TMB" despite repeated concerns by all specialists over the posibility of "MTB" role in this abscess devlopment.

30.  As of November 4,2004 the defendants "FAHC" and Dr.Horgan, Dr. Link and Dr. Natal, failed to diagnose and trat the underlying etiology of the abcess  that causes the neurological defect.

31.  As a result of the neurological surgery the plaintiff motor functioning was deminished to less than half of his normal functioning ability prior to the surgery.

32.  As a result of the nerological surgery the plaintiff will remain partiallly paralyzed and his ability is limited to a bare minimum.

33.  As a result of the failure to properly culture and identify the causitive agent to the abcsess, the Plaintiff remains in continous jepordy of a recarrence as the test for Tubercolosis and anerobic bacteria were never performed.

34.  As a result of the failure to properly culture and identify the causitive agent that causes the abscess. The plaintiff incurred a severe life-threatining illness.

-10-

35.    On November 22,2005 the District Court in case number 01-629-004 modified plaintiff's sentence pursuant to Rule 35, so that it reflect only 24 months to ran consecutive to the 1st case and 36 months to ran concurrent with the 1st sentence.

36.    On June 15,2006 the Palintiff was scheduled to be released to a half-way house according to the Bureau of prisons calculations in anticipation for November 22,2006 final release date.

37.    On November 2,2006 the district court issued another order to accomedate its initial order by clairfiying its original order to the Bureau of Prisons.

38.    On November 7,2006 "Federal Medical Correctional facility Ft.Devens, misinterperted the court order and ordered the immediate release of plaintiff on that date.

39.    Subsequest to the release date the plaintiff was able to secure an appartment and employment and began to reestablish his family ties. The Plaintiff remained under supervision of the Probation officer in Newark, New Jersey for aditional three years after his release date.

40.    On November 15,2006 the Plaintiff was contacted by the Probation officer to meet with the plaintiff in Newark New Jersey at 11:am that day. Plaintiff was arrested by two United States Marshals at the Probation Office where the meeting was sechudule the arrest was made because the Bureau of Prisons made mistake in its calculation of plaintiff's sentenc This according to the Probation officer.

41.   On November 15,2006 Upon the arrival of the Plaintiff to the Probation office in Newark. He was arrested by two U.S. Marshals officers because of mistake made by the Bureau of Prisons in releasing the Plaintiff. The Plaintiff as accompanied by his Sister due to his medical condition of being level care of 4,the Plaintiff was taken to Passiac County Jail in Passiac New Jersey.

42.   On November 16,2006 the plaintiff was before the U.S. Magistrate Judge, Esther Salas in the District of New Jersey of Newark New Jersey. The Court appointed the New Jersey Public Defenders office to represent the Plaintiff.    Mr.Peter M Carte was assigned to the Plaintiff.

43.   Subsequent to the Magistrate Hearing Mr.Carte was fully aware of plaintiff's medical condition and the urgent need for medical care and medications.

44.   During the Magistrate Hearing in which was conluded with the decision that Plaintiff be returnred back to his institution, the Palintiff made the Magistrate aware of his medical condition and the Magistarte decided to deal with this issue of the record.

45.   New Jersey Public Defenders office and Mr. Carte, was fully aware of plaintiff's longstanding medical history and the medications he is under.

46.   New Jersey Public Defenders office and Mr.Carte at all times were fully aware of Plaintiff being Diabetice problems and Hypertension, Hyperlipidemia and history of cardiac arrhythimia in addition to his recent neurosurgery on his spinal cord that left him partially paralyzed with loss of his ability to function normally. They were fully aware of all his medical complications.

-12-

47.   During November 16 hearing the Plaintiff urged his appointed Counsel to seek his release and self surrender himself to "FMC Devens" without going through the hardship of being transferred through the system and layin County jails.

48.   On November 15,2006 the Plaintiff was eligeble to his half-way house. His maximum release date as per the bureau of Prison's new calculations was April 24,2007. The plaintiff was entitled by Policy Statement to a Six months (6) half-way house.

49.   Between November 15,2006 to November 20,2006 the Plaintiff was subjected to gratutious physical, mental and emotional torture for the entire period of five long harrowing days at the Passaic County Jail.

50.   From November 15 through November 20,2006 the plaintiff was denied medical care, medication and had not been seen by any medical staff at the Passiac County Jail.

51.   Plaintiff receives diabese medications that is a must he received twice daily. He was prescribed highblood pressur medication that he was denied during his 5 days at the passaic County jail. Plaintiff was denied completely any and all medical treatment or medications as he has repeatedly requested from the Passiac County Jail staff upon his arrival and during his stay in the five days period.

52.   Plaintiff have limited medical restrictions because of his recent spinal cord surgery. He was forced to be shackled tightly by his ankles and hand-kuffed by the hand for the entire five days while he was sitting on concrete benches and metal benches.

-13-

53.   Plaintiff during the period of five days from November 15,
2006 until November 20,2006 suffered swelling in his legs, bruised
weakness and numbness increased significantly. Plaintiff began to
experiencing severe back pain, pain in his shoulders, significant
imbalance. The Plaintiff suffered sugar craches as a result of his
diabetese condition and the lack of medical care and balanced meals
for diabetese patients.

54.   Defendant New Jersey Public Defenders office and Mr.Carte,
failure to request the release of Plaintiff based on his medical
condition was the cause of plaintiff's pain and suffering from the
unwanton inflictions of pain he received during the five days period
he spend at the county jail.

55.   Defendant New Jersey Public Defenders office and attorney
Peter M. Carte silence about the plaintiff's asserted medical
condition made it reasonably foreseeable that he will be harmed
and injured in going through transferrs without medical assistance.

56.   Defendat New Jersey Public Defenders and attorney Peter
M. Carte were fully aware of plaintiff's medical condition and
his care level that required medical staff assistant.

57.   Defendant New Jersey Public Defenders and attorney
Peter M. carte silence on the issue of releasing the plaintiff
since he was entitled to a half-way house subjected the plaintiff
to permenant injuries and unwanton pain and suffering.

58.   Defendant New jersey Public defenders and attorney
Peter M. Carete failure to insure that Plaintiff's medication be
provided to him at once, Since they were fully aware of his multiple
medical problems and his recent neurosurgery.

59.    Defendants New jersey Public defenders and attoreny
Peter M. Carte failure to insure the court intervention to have
the plaintiff medication be provided on the same day.

60.    Defendant New Jersey Public defenders and attorney
Peter M. Carte were advised by the plaintiff of his urgent needs
for his medication, when Plaintiff notified the Magistrate Judge
in the November 16,2006 hearing. The Magistrate left the matter
of the record and directed the attorney to make the appropriate
mesaures to accomodate plaintiff's medical needs.

61.    Defendant New jersey Public defenders and attorney
Peter M. Carte failure to secure plaintiff's diabetice medications
made the plaintiff missed his dosages for five days, he suffered
direct physical harm as well as residual physical injury from the
long-term cumulative effects of being forced to miss his medication.

62.    Defendant New Jersey Public defenders office and attorney
Peter M.Carte, were at all times aware of the plaintiff's multiple
medical conditions, including diabetes and high blood pressure,
and his neurosurery that left him paralyze from the waste down.
They well known the immediate negative effects and serious long-
term medical consequences which result from missed or late dosages
of medications for diabetes and high blood pressure.

63.    From November 15,2006 through November 20,2006
defendants Passiac County Jail, known and unknown medical staff
and correctional officers were aware of plaintiff's medical
condition through plaintiff's repeated requests to have his
diabetes and high blood pressure medications.

-15-

64.   During the period of November 15 through November 20 the plaintiff was not provided with any medical assistance of any kind, despite his repeated request for his medications.

65.   Defendants Passiac County Jail and Correctional health services denied palintiff's repeated requests for his medications and to be seen by any medical staff.

66.   Defendants Passiac County Correctional officers whom their names unknown at this time were fully aware of plaintiff's medical comlications and needs for his diabetese and high blood pressure medications.

67.   Defendants Passiac County Jail, its correctional health services, correctional staff members known and unknown were fully aprised of plaintiff's medical condition through the U.S. Marshals staff whom they brought plaintiff to that facility.

68.   Defendant the State of New Jersey is the entity that created Passiac County Jail and fuded its operations.The defendant Passiac County Jail is a component of New Jersey Department of Correction whic is an entity created by the State of New Jersey.

69.   Defendants Passiac County Jail, Correctional health services, Correctional Staff, and the State of New Jersey denied the Plaintiff the medical care that is mandatory required and subjected him to long-term injuries and the unwanton pain and suffering.

70.   Defendants Passiac County, the State of New Jersey correctional health services, known and unknown staff made the plaintiff missed his daibetese, high blood pressuer for 5 days

-16-

he suffered direct physcial harm as well as residual physical injury from the long-term cumulative effects of being forced to miss his medications.

71.   Defendants Passaic County Jail, Correctional Health Services, the State of New Jersey is an employees working under color of State at all times were fully aware of Plaintiff's medical condition, the need for his medications and ignored the risk and harm to the Plaintiff.

72.   Defendants Passiac County Jail, Correctioanl Health Services, the Warden of the Passiac County Jail, known and un-known staff left the plaintiff without any medical care, including but not limited to his daibetese medications and high blood pressuer medications. His severe neurological surgery and the need for a special medical assistance at all times. Plaintiff suffered and will continoue to suffer injuries to his body, heart, kidneys, vision among other long-term complications.

## FIRST CAUSE OF ACTION: MEDICAL MALPRACTICE: IV.

73.   Plaintiff refers to and incorporate by refrence the allegations contained in paragraph 1 through 72 of this complaint the same as if they were repeated here in full.

74.   Defendants "Fletcher Allen Health Care Inc" is the hospital that performed the neurosugery on the Plaintiff on October 25,2004  had committed Medical Malpractice in their failure to diagnose and treat the underlying etiology of the abcess that cause the neurological defict.

-17-

As a result of failure to properly culture and identify the causitive agent, the plaintiff remains in continuous jepordy of a recarrence of the developing of another abcess on his spinal cord, and recarrence as the test for tubercolosis and anerobic bacteria were never performed.

75.   The defendants actions constitute Mediacl Malpractice by their failure to properly identify the causitive agent that developed abcess on plaintiff's spinal cord

76.   The defendants actions constitute Medical Malpractice in their failure to diagnose and treat the underlying etiology of the abcess that causes the neurological defect.

77.   As a direct and proximate result of defendant's Medical Malpractice, the plaintiff suffered injuries, including but not limited to future ability to prevent of recarrence of abcess on his spinal cord.

78.   As a direct and proximate result of defendant's Medical Malpractice  in their failure to diagnose and treat the underlying etiology of the abcess, the plaintiff suffered injuries, including but not limited to loss of enjoyment of life, loss of income, emotional and Psyshological pain and suffering that the abcess will recarrence at any moment.

79.   Plaintiff seeks compensatory damages from defendant "Flectcher Allen Health Care Inc," for their Medical Malpractice the maount of $10,000,000. (Ten million U.S. Dollars)

-18-

SECOND CAUSE OF ACTION : NEGLIGENCE: V.

80.   Plaintiff refers to and incorporate by refrence the allegations contained in paragraph 1 through 79 of this complaint the same as if they were repeated here in full.

81.   Defendant "Fletcher Allen Health Care Inc," actions in their failure to properly diagnose and treat the underlying etiology of the abcess taht cause plaintiff's neurological defect constitute negligence.

82.   As a direct and proximate result of defendant's negligence in their failure to diagnose and treat the underlying etiology of the abcess, the plaintiff suffered injuries, including but not limited to the ability to  prevent recarrence of the abcess.

83.   As a direct and proximate result of defendant's negligence in their failure to properly identify the acusitive agent that developed the abcess, the plaintiff suffered and will continoue to suffer injuries including but not limited to loss of enjoyment of life, loss of income, emotional and psychological pain and suffering.

84.   Plaintiff seeks compensatory damages from defendant "Fletcher Allen Health Care Inc," for negligence the amount of $10,000,000.(Ten  million dollars).

-19-

## THIRD CAUSE OF ACTION RECLESSNESS/DISREGARD VI.

85.   Plaintiff refers to and icorporate by refrence the allegations contained in paragraph 1 through 84 of this complaint the same as if they were repeated here in full.

86.   Defendant "Fletcher Allen Health Crae Inc," actions and their failure to diagnose and treat the underlying etiology of the abcess that causes the neurological defect constitute reclessness/disregard to plaintiff's life and safety. As a result of failure to properly culture and identify the causitive agent, the plaintiff remains and continoues jepordy of recarrence of of another abcess as the test for tubercolosis and anerobic bacteria were never performed.

87.   The defendant actions constitute reclessness/disregard to the plaintiff life and safety when they failed to diagnose and treat the underlying etiology of the abcess that acuses the nerological defect.

88.   As a direct and proximate result of defendant's reclessness/disregard, the plaintiff suffered injuries,including but not limited to enjoyment of life, loss of income, emotional and psychological pain and suffering in not knowing when and if the abcess will recarrence again.

89.   As a direct and proximate result of defendant's reclessness/disregard, to his life and safety, the plaintiff remains in continoues jepordy of a recarrence as the test for tubercolosis and anerobic bacteria were never performed.

-20-

90.    Plaintiff seeks compensatory damagesfrom defendant "Fletcher Allen Health Care Inc" for their reclessness/disregard to plaintiff's life and safety the amount of $10,000,000. (Ten million dollars).

## FOURTH CAUSE OF ACTION BREACH DUTY OF CARE : VII:

91.    Plaintiff refers to and incorporate by refrence the allegations contained in paragraph 1 through 72 of this complaint the same as if they were repeated here in full.

92.    Defendant "Fletcher Allen Health Care Inc" actions in their failure to diagnose and treat the underlying etiology of the abcess that causes the neurological defect constitute breach duty of care they owed to the plaintiff.

93.    Defendant action in failure to diagnose and treat the underlying etiology of the abcess, and their failure to identify the causitive agent of the abcess left the plaintiff open for recarrence of another abcess. The defendant has a duty of care to insure the well being and the safety of the plaintiff while he is under their care. The defendant breached that duty in their failure to treat and identify the causitive agent that developed the abcess.

94.    As a direct and proximate result of defendant's breach duty o fcare, the palintiff suffered injuries including but not limited to enjoyment of life, loss of income, emotional and psychological pain and suffering.

-21-

95.   As a direct and proximate result of defendant's breach duty of care, the plaintiff remains in continues jeporcy of a recarrence as the test for tubercolosis and anerobic bacteria were never performed.

96.   Plaintiff seeks compensatory damages from defendant "Fletcehre Allen Health Care Inc," for their breach duty of care owed to the plaintiff in the amount of $10,000,000. (Ten million U.S. Dollars).

## FIFTH CAUSE OF ACTION GROSS NEGLIGENCE VIII.

97.   Plaintiff refers to and incorporate by refrence the allegations contained in paragraph 1 through 96 of thsi complaint the same as if they were repeated here in full.

98.   Defendant "Fletcher Allen Health Care Inc," failure to diagnose and treat the underlying etiology of the abcess that causes the neurological defect constitute gross negligence.

99.   Defendant "Fletceher Allen Health Care Inc," failure to identify the causitive agent of the abcess constitute gross negligence, that left the plaintiff open for recarrence of another abcess.

100.   As a direct and proximate result of defendant gross negligence the plaintiff suffered injuries including but not limited to engoyment of life, loss of income, emotional and psychological pain and suffering.

101.   As a direct and proximate result of defendant gross negligence the plaintiff remains in continues jeporcy of a recarrence as the test of TB and anerobic bacteria were never done.

-22-

## SIXTH CAUSE OF ACTION OF MEDICAL MALPRACTICE/NEGLIGENCE/ GROSS NEGLIGENCE/ BREACH DUTY OF CARE/ RECLESSNESS/DISREGARD  VIIII.

102.  Plaintiff refers to and incorporate by refrence the allegations contained in paragraph 1 through 96 of this complaint the same as if they were repeated here in full.

103.   Defendants Dr.Micahel A. Horgan, Dr. Timothy Link, and Dr. David Nathan, (collectively Docters), preformed the neursurgery on plaintiff's spinal cord by removing an abcess from his spinal cord. The defendants docters committed Medical Malpractice, negligence, gross negligence, breach duty of care, and reclessness disregard to plaintiff's life and safety when the failed to diagnose and treat the underlying etiology of the abcess that causes the neurological defect.

As a result of failure to properly culture and identify the causitive agent, the plaintiff remains in continoues jepordy of a recarrence of the developing of another abcess on his spinal cord, and recarrence as the test for tuberolosis and anerobic bacteria were never performed.

104.  As a direct and proximate result of defendants docters the plaintiff suffered injuries, including but not limited to future ability to prevent the recarrence of the abcess.

105.  As a direct and proximate result of defendants docters madical malpractice, negligence, gross negligence, breach duty of care, and their reclessness disregard to plaintiff's health and safety , the plaintiff suffered injuries, including but not

-23-

limited to loss of enjoyment of life, loss of income, emotional and psychological pain and suffering. Their actions made it impossible for the palintiff to prevent the possobility of recarrence of the abcess.

106.  Plaintiff seeks compensatory damages from defendants docters for their malpractice/ negligence/gross negligence/ breach duty of care and reclessness disregard to his life and safety, in the amount of $10,000,000. (Ten million dollars).

## SEVENTH CAUSE OF ACTION VIOLATIONS OF PLAINTIFF'S RIGHTS UNDER THE EIGHT AMENDMENT: X.

107.  Plaintiff refers to and incorporate by refrence the allegations contained in paragraph 1 through 106 of this complaint the same as if they were repeated here in full.

108.  Defendants Passiac County Jail, Correctional Haelth Services of Passiac County Jail, health services staff memebrs known and unknown, Correctional officers on duty from November 15,2006 through November 20,2006 and the State of New jersey are State employees who were acting under color of law during the period in which Plaintiff was subjected to cruel and unusual punishment at the Passiac County jail in the City of Patterson, New Jersey.

109.  Plaintiff serious medical needs have been described, and he was forced to missed his diabetese medication for five days, he suffered direct physical harm as well as residual physical injury from the long-term effects of being forced to miss such medication, which constituted unnecessary and wanton infliction of pain.

-24-

On the hand of the defendants in ¶ 108, the plaintiff was denied medical treatment, he was denied to be seen by any medical staff, he was denied his diabetese, blood pressure, and other medications for a period of five days.

110.   As a direct result of defendants' violations of the plaintiff's specific constitutional right to be free from cruel and unusual punishment under the Eight Amendment to the United States Constitution.

111.   As a direct and proximate result of defendants' denial to provide medical care to the plaintiff, he suffered direct physical harm as well as residual physical injury from the long-term cumulative effects of being forced to miss his medication for his daibetese and blood pressure.

112.   As a direct and proximate result of defendants' denial to provide medical care and considering his medical condition of being care level 4, resulted from his paralyzed condition, and the multiple back surgeries he just received the defendants subjected plaintiff to gratuitous physical, mental and emotional torture for a period of five long harrowing days sleeping on concrete slabs when his condition required special medical care.

113.   Plaintiff seeks compensatory damages from defendants lised in ¶ 108 of this Complaint for their violation of his Eight Amendment to the United States Constitution, in the amount of $10,000,000. (Ten million dollers).

-25-

## EIGHT CAUSE OF ACTION VIOLATIONS OF RIGHT TO EQUAL PROTECTION UNDER THE FIFTH AMENDMENT  XI.

114.   Plaintiff refers to and incorporate by refrence the allegations contained in paragraph 1 through 113 of this complaint the same as if they were repeated here in full.

115.   Defendants Passiac County Jail, Correctional Health Services, health services staff members whom were on duty for *2 the period of 11-15-2006 through 11-20-2006, Correctional officers, known and unknown, the warden of Passiac County Jail, and the State of New Jersey, are employees who were acting under color of law during the period in which plaintiff was subjected to a pattern of systematic and indidious discrimination by defendants due to his ethnicity and /or national origin.

116.   The pattern of systematic and invidious discrimination inflicted upon the plaintiff was not imposed as the resuly of any compelling concern or reason, but rather, was done for the sake of discrimination against plaintiff on the basis of his ethnicity and /or origin.

117.   Plaintiff has suffered damages as a direct result of defendants' ciolations of his specific constitutional right to equal protection under the Fifth Amendment to the United States Const.

---

*2   Plaintiff will amend this complaint to reflect the exact names of all medical staff, correctional officers once he is provided with the correct names.

-26-

118.    As a direct and proximate result of the violations the plaintiff suffered direct physical harm as well as residual physical injury from the long-term cumulative effect of being forced to miss his medication for his diabetese and high blood pressure medications.

119.    As a direct and aproximate result of defendants' denial to provide medical care to plaintiff, he suffered gratuitous physical, mental and emotional torture for a period of five long harrowing days sleeping on concrete slabs while his medical condition required special care.

120.    Plaintiff seeks compensatory damages from defendants listed in ¶ 108 of this complaint for their violation of his Fifth Amendment right to equal protection, in the amount of $10,000,000.(Ten  million dollers).

## NINETH CAUSE OF ACTION NEGLIGENCE/GROSS NEGLIGENCE/ BREACH DUTY OF CARE/ RECLESSNESS AND DISREGARD:  XII

121.    Plaintiff refers to and incorportae by refrence the allegations contained in paragraph 1 through 120 of this complaint the same as if they were repeated here in full.

122.    Defendants Passiac County Jail, its Warden, Correctional Health Services, medical staff known and unknown, correctional officers committed negligence, gross negligence, and they breach duty of care they owed to the plaintiff. Defendants further actions constituted reclessness and disregard to plaintiffs' life and safety when they failed to treat and provide medical care for his diabetese, high blood pressure medications.

-27-

123.   As a direct and proximate resuly of defendants violations the plaintiff suffered injuries, direct physical harm as well as residual physical injury from the long-term cumulative effect of being forced to mis his medication of diabetese, high blood pressure and other factors associated with this medications.

124.   As a direct and aproximate result of defendants' denial to provide medical care to plaintiff, he suffered gratuitous physical, mental and emotional torture for a period of five long harrowing days sleeping on concrete slabs.

125.   Plaintiff seeks compensatory damages from defendants listed in ¶ 108 of this complaint for their negligence, and gross negligence, breach duty of care, reclessness and disregard to the plaintiff in the amount of $ 10,000,000. (Ten million dollers).

## TENTH CAUSE OF ACTION CONSTITUTIONAL RIGHT VIOLATION BY THE NEW JERSEY PUBLIC DEFENDERS OFFICE , AND PETER M. CARTE ATTORNEY XIII.

126.   Plaintiff refers to an incorporate by refrence the allegations contained in paragraph 1 through 125 of this complaint the same as if they were repeated in full.

127.   Defendants New Jersey Public defenders and attorney Peter M. Carte, violated plaintiff's constitutional rights when they fail to insure that plaintiff received medical care while being detained.

128.   Defendants failure caused the violation to occur, and subjected the plaintiff to gratuitous physical, mental and emotional torture for a period of five days, without medications for his diabetese and blood pressure conditions.

-28-

129.    Defendants were acting under color of state authority at all times were advised by the plaintiff and plaintiff's family of his medical condition and the urgent medical care needed.

130.    As a direct and proximate result of defendants violations the plaintiff suffered injuries, direct physical harm ae well as residual physical injury from long-term cumulative effect of being forced to mis his medications and denied medical treatment.

131.    Plaintiff seeks compensotary damages from defendants New Jersey Public Defenders office and attoreny Peter M. Carte, for their violation of his constitutional rights, in addition to their breach duty of care they owed to the plaintiff in the amount of $5,000,000. (five million dollers).

132.    Plaintiff assert his right to a jury trial under the Seventh Amendment to the United States Constitutions.

133.    Plaintiff seeks punitive damages of $1,000,000. on each of the defendants in this action.


On October 19,2007


                                        Respectfully Submitted

                                        _Aktham Abuhouran_
                                        Aktham Abuhouran
                                        522 Central Ave. Apt#3
                                        Jersey City, New Jersey
                                        07307
                                        (201) 595 9377